UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 14-CV-4179 (JFB) (GRB)
_____

MICROTECH CONTRACTING CORPORATION,

Plaintiff,

VERSUS

MASON TENDERS DISTRICT COUNCIL OF GREATER NEW YORK; ASBESTOS, LEAD, AND HAZARDOUS WASTE LABORERS' LOCAL 78; EDISON SEVERINO, PERSONALLY, AND IN HIS OFFICIAL CAPACITY AS BUSINESS MANAGER; AND JOHN DOES NOS. 1 TO 5,

Defendants.
_____

**MEMORANDUM AND ORDER**
October 24, 2014
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Microtech Contracting Corporation ("Microtech") brings this action against the Mason Tenders District Council of Greater New York ("District Council"); Asbestos, Lead, and Hazardous Waste Laborers' Local 78 ("Local 78" or "the Union"); and Edison Severino, personally and in his official capacity as business manager of Local 78 (collectively, "defendants").

The present motion seeks a preliminary injunction prohibiting defendants from engaging in activity that plaintiff claims is in breach of the collective bargaining agreement ("CBA") between Microtech and Local 78. Specifically, plaintiff seeks to enjoin defendants from "[p]icketing, distributing handbills or flyers and/or posting an inflatable rat or similar sign or device at any job site" where Microtech is working. (Proposed Order, Docket Entry 7, at 2). The issue before the Court has been narrowed, based on the representation of defense counsel "that for the duration of this litigation, Local 78 agrees to limit its conduct to the use of the inflatable rat and will no longer use any sign to accompany the rat with respect to the current dispute."[1]

---

[1] Plaintiff has not questioned that representation and, in any event, there is simply no evidence that defendants would not abide by this representation to the Court. In fact, earlier in the litigation (at a hearing on July 11, 2014), defendants represented that, with the exception of the use of the inflatable rat, they would not engage in any other activities of which plaintiff had previously complained. Since that representation over three months ago, plaintiffs have not brought to the Court's attention any instance where defendants have acted in a manner inconsistent with that representation. Thus, under the circumstances of this case, the Court has no concern that defendants will violate their representation that

(October 13, 2014 Letter, Docket Entry 26). Accordingly, the Court confines its analysis in this Memorandum and Order to plaintiff's request for a preliminary injunction preventing defendants from posting an inflatable rat at Microtech work sites.[2]

For the reasons discussed below, the Court denies plaintiff's motion. In particular, because it is uncontroverted that the labor dispute between the parties (related to the continued employment by Microtech of a particular individual) is unrelated to the terms of the CBA and is not an issue that is subject to the mandatory grievance clause of the CBA, the Court is deprived of jurisdiction, pursuant to the Norris-LaGuardia Act, from entering an injunction regarding the use of the inflatable rats. In addition, Section 104 of that Act also would separately prohibit the Court in this case from issuing an injunction, because the Court would be enjoining defendants from giving publicity to the existence of a labor dispute. Finally, even assuming *arguendo* that the Norris-LaGuardia Act permitted such an injunction, the Court would deny the motion because, with respect to the use of the inflatable rat, plaintiff cannot show a likelihood of success on the merits, or even sufficiently serious questions going to the merits to make them a fair ground for litigation.

It is abundantly clear that Local 78 has a constitutional right to use an inflatable rat to publicize a labor dispute, unless Local 78 surrendered that right in the CBA or some other contractual agreement. Although plaintiff argues that the defendants in fact surrendered that right by agreeing not to engage in "disruptive activity" in the "no-strike" provision, the Court disagrees. The "disruptive activity" clause is qualified by the term "of a similar nature," which references the other specific activities prohibited by the "no-strike" provision—namely, "strikes, walkouts, picketing, work stoppages, slowdowns, or boycotts." In the instant case, the use of the inflatable rat does not involve work stoppages, slowdowns, or boycotts of any kind. In fact, there is no allegation that the use of the rat has any impact on labor at the job site. To the extent plaintiff argues that the use of the inflatable rat is "disruptive" to Microtech's business because its clients do not like the inflatable rat (or the publicity that such a rat can bring), that type of generalized economic disruption caused by union speech is not within the parameters of the "no strike" provision. To hold otherwise would be to prohibit the union from engaging in any speech that is harmful to plaintiff's business image. Such an interpretation is completely inconsistent with the plain language of the "no strike" provision, and would improperly allow that provision to completely eviscerate the First Amendment rights of the union. Thus, the Court concludes that the "disruptive activity" language of the "no strike" clause does not prohibit Local 78 from engaging in this type of First Amendment activity in this case.[3]

---

they will only use the inflatable rat while the other issues are being resolved in this litigation. Accordingly, with respect to these other alleged activities, plaintiff cannot demonstrate that they will suffer any irreparable harm during the pendency of this litigation, and the motion for a preliminary injunction as to the other activities is denied on that ground. Obviously, should Local 78 engage in conduct that is inconsistent with its representations, plaintiff may renew its application for a preliminary injunction immediately.

[2] Although plaintiff's counsel also suggested at oral argument that defendants' conduct violates the National Labor Relations Act (NLRA), counsel acknowledged that the issue regarding the NLRA is not before this Court; rather, plaintiff's claim here is that the use of the inflatable rat violates the CBA. (*See* 10/10/14 Oral Arg. Tr., at 14-15.)

[3] Plaintiff has requested an evidentiary hearing in order to offer evidence that the use of the inflatable

I. BACKGROUND

In short, this case arises from the protest activities of Local 78 and the District Council, whose members work as laborers on projects run by Microtech, an asbestos abatement contractor. The relationship between the parties is governed by a collective bargaining agreement. Article XI, § I of the CBA prohibits "strikes, walkouts, picketing, work stoppages, slowdowns, boycotts or other disruptive activity of a similar nature at a job site of, or otherwise directed at any Employer during the term of this Agreement," except under circumstances not presented here. (Docket Entry 7-2, at 34.) It is undisputed that defendants have been posting an inflatable rat at Microtech work sites; plaintiff claims this conduct violates the "disruptive activity" clause of the CBA. (Pl. Mem. at 1.) Plaintiff alleges, and defendants do not dispute, that defendants have been protesting at Microtech work sites in order to pressure plaintiff to terminate a Microtech supervisor named George Moncayo. More specifically, plaintiff alleges that "Microtech's problems with Local 78 began with, and are solely the result of, the fact that in April 2014 Microtech hired [Moncayo] whom Local 78 and Severino disliked and had targeted for punishment." (Compl., ¶¶ 27-30.) Defendants are allegedly targeting Moncayo because he previously operated a non-union affiliated asbestos abatement company. (*See Id.*, ¶ 29).

Plaintiff commenced this action on July 8, 2014, and sought a temporary restraining order prohibiting defendants from, *inter alia*, hand-billing, picketing, and posting an inflatable rat at Microtech work sites. (*See* Proposed Order, Docket Entry 6). On July 11, 2014, the Court held a hearing and denied plaintiff's request for a temporary restraining order.  Plaintiff then filed materials in support of a motion for a preliminary injunction. Defendants filed memoranda in opposition on July 15, 2014 and July 16, 2014.  Defendants filed a letter on July 16, 2014 informing the Court that "for the duration of this litigation Local 78 agrees to limit its conduct to the use of the inflatable rat (and accompanying sign) and will refrain from the other conduct plaintiff seeks to preliminarily enjoin (e.g. picketing, striking, instructing employees to not work for Microtech, etc.) . . . ." (Letter, Docket Entry 12). Plaintiff submitted a reply in response to defendants' opposition on September 3, 2014.  The Court held oral argument on October 10, 2014.

At oral argument, defense counsel conceded that defendants' activities at Microtech work sites are intended to pressure plaintiff to terminate Moncayo as an employee at Microtech. In other words,

---

rat is disruptive to its business, and therefore violates the CBA. The Norris-LaGuardia Act requires the Court to hold such a hearing to make findings of fact, as a precondition to issuing an injunction. *See* 29 U.S.C. § 109.  However, the Court has determined that such a hearing is unwarranted because, even if all of plaintiff's allegations are accepted as true (including that the use of the inflatable rat is disruptive in terms of the potential loss of business), plaintiff cannot obtain an injunction regarding the defendants' use of the inflatable rat for the reasons discussed herein.  Thus, because plaintiff cannot prevail on its motion even if all of its facts are accepted as true, any disputed facts are not essential to resolving the motion, and an evidentiary hearing regarding such facts is unnecessary. *See Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997) (stating that "there is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it," and that "[g]enerally, the district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when *essential* facts are not in dispute" (internal quotation marks and citations omitted) (emphasis added)).

3

for purposes of this motion, the parties have agreed that Local 78 has used, and will continue to use, an inflatable rat in order to protest plaintiff's continued employment of Moncayo. Defendants do not contend, and plaintiff does not allege, that the inflatable rat is a response to any purported breach by Microtech of the CBA.

Although the briefing and oral argument encompassed both the use of the inflatable rat and the accompanying signage and hand-billing, following oral argument, defendants submitted a letter to the Court, stating that "for the duration of this litigation, Local 78 agrees to limit its conduct to the use of the inflatable rat and will no longer use any sign to accompany the rat with respect to the current dispute." (October 13, 2014 Letter, Docket Entry 26). Plaintiff has not questioned or challenged that representation and, as discussed above, the Court concludes that the irreparable harm requirement cannot be met in light of that representation. Therefore, the lone issue before the Court is plaintiff's application for an injunction prohibiting defendants from posting an inflatable rat at plaintiff's work sites.

This matter is fully submitted, and the Court has thoroughly considered the submissions of the parties.

## II. STANDARD OF REVIEW

In order to prevail on a motion for a preliminary injunction, a party must establish: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004)

(quoting *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)). "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (internal quotation marks omitted).

## III. DISCUSSION

As a threshold matter, the Court must consider whether it has jurisdiction to issue the requested injunction. Accordingly, the discussion turns first to whether the Norris-LaGuardia Act divests the Court of jurisdiction to issue an injunctive order. The discussion then considers, in the alternative, whether a preliminary injunction is merited under a traditional balancing of equities, considering whether the inflatable rat constitutes "disruptive activity" within the meaning of the CBA. Finally, the Court considers whether the inflatable rat is speech protected by the First Amendment.[4]

### A. The Norris-LaGuardia Act

This action arises from a labor dispute,[5] and therefore the Court's jurisdiction to issue the requested injunction is governed by the Norris-LaGuardia Act ("NLGA"). *See*

---

[4] The District Council has also opposed the motion, arguing that it lacks personal involvement in the conduct at issue and is not vicariously liable for the conduct of its affiliates, and therefore cannot be subject to an injunctive order. (*See* Docket Entry 10.) Because the motion for a preliminary injunction lacks merit for the reasons discussed herein, the Court need not consider whether there is an agency relationship between Local 78 and the District Council that permits the Court to enjoin the District Council on the basis of its affiliate's activities.

[5] The parties agree that this action arises from a "labor dispute," as that term is defined in § 113(a) of the NLGA. *See* Docket Entry 8 at 4; Docket Entry 9 at 7.

4

29 U.S.C. §§ 101, 113(a); *Mfg. Woodwokers Ass'n of Greater N.Y. v. N.Y. Dist. Council of Carpenters*, No. 13 Civ. 4473, 2013 U.S. Dist. LEXIS 102275, at \*6 (S.D.N.Y. July 18, 2013) (citing *Niagara Hooker Emps. Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1375 (2d Cir. 1991)). Defendants argue that two provisions of the Norris-LaGuardia Act divest this Court of jurisdiction to issue the requested injunction. The Court agrees.

"The NLGA deprives federal courts of jurisdiction to issue 'any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter.'" *Northwest Airlines Corp. v. Ass'n of Flight Attendants*, 483 F.3d 160, 166 (2d Cir. 2007) (citing 29 U.S.C. § 101). This provision "generally admits of only limited exception," and is construed strictly. *Id*. In *Boys Markets*, the Supreme Court carved out a narrow exception, holding that the NLGA does not strip the courts of jurisdiction to enjoin a strike in a labor dispute where a collective-bargaining agreement contains a mandatory arbitration clause, and where the strike "is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate . . . ." *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 254 (1970) (quotation omitted); *see also Time Warner Cable v. Int'l Bhd. of Elec. Workers*, No. 14-CV-2437, 2014 U.S. Dist. LEXIS 62272, at \*6-8 (E.D.N.Y. May 5, 2014) (applying *Boys Markets* and denying a motion for a preliminary injunction). The Supreme Court later clarified *Boys Markets* in *Buffalo Forge*, holding that the *Boys Markets* exception did not apply where the strike at issue "was not over any dispute between the union and the employer that was even remotely subject to the arbitration provisions of the contract." *Buffalo Forge Co. v. United Steelworkers of Am.*, 428 U.S. 397, 406 (1976). As the Second Circuit has explained, following *Boys Markets* and *Buffalo Forge*, a court may not issue an injunction unless it finds "that the strike clearly violates an express or implied promise not to strike, and that the underlying issue is arbitrable." *Niagara Hooker Emps. Union*, 935 F.2d at 1376; *see also Metro. Jewish Geriatric Ctr. v. Local 144*, No. 92 Civ. 4892, 1992 U.S. Dist. LEXIS 13084, at \*4 (S.D.N.Y. Aug. 13, 1992).

In this case, it is undisputed that the collective bargaining contract contains an express prohibition against "strikes, walkouts, picketing, work stoppages, slowdowns, boycotts or other disruptive activity of a similar nature at a job site," and therefore the first condition of the *Boys Market* exception is satisfied. (*See* CBA, Docket Entry 7-2, at 34.) Accepting, for the moment, plaintiff's contention that the inflatable rat is conduct prohibited by the "no strike" clause of the CBA[6], plaintiff nonetheless must show that the conduct arises from an underlying issue that is subject to mandatory arbitration under the contract.

Plaintiff's submissions conclusively establish that the dispute between the parties arises from an issue that is not subject to the mandatory grievance clause of the CBA. As plaintiff concedes:

---

[6] For the purposes of this analysis only, the Court accepts plaintiff's contention that the inflatable rat falls within the "no strike" provision of the CBA. However, for the reasons noted in section III.B.1. of this opinion, the Court holds that the display of the inflatable rat is not conduct that falls within the no-strike provision of the CBA. For the same reasons, the Court rejects plaintiff's argument that Article XI, Section 4 of the CBA, which expressly permits the employer to seek a federal injunction to enforce the no-strike clause, *see* Docket Entry 7-2 at 36, trumps the anti-injunction provisions of the NLGA.

5

> All of the [defendants'] actions have been undertaken not to redress any legitimate grievance of Local 78 – significantly, Local 78 has not pursued any grievance against Microtech under the grievance/arbitration provisions of the CBA – but solely in order to "punish" Microtech and "teach it a lesson" because Microtech has employed as a supervisor, and has refused to fire, one individual – Goerge Moncayo – whom Local 78 and Severino have apparently targeted for several years, ever since he had his own small asbestos abatement company and refused to sign with Local 78.

(Pl. Mem. at 2-3.) It is uncontested that defendants have used the inflatable rat in order to protest Microtech's continued employment of Moncayo, and not because the union believes that Microtech has violated the terms of their contract. Though plaintiff argues that this is not a "legitimate grievance," this argument inverts the question presented by *Buffalo Forge*, and in fact makes defendants' case. The inquiry under *Buffalo Forge* is whether the union is obliged, under the contract, to arbitrate their grievance instead of striking; the purpose of a *Boys Market* injunction is to give effect to the arbitration clause. *Buffalo Forge*, 428 U.S. at 408 (denying injunction where the strike "had neither the purpose nor the effect of denying or evading an obligation to arbitrate or of depriving the employer its bargain."); *Elevator Mfrs' Ass'n v. Int'l Union of Elevator Constructors*, 689 F.2d 382, 385 (2d Cir. 1982) ("the mere arbitrability of the issue whether a strike or work stoppage violates an express or implied no-strike clause does not entitle the employer to 'Boys Markets' injunctive relief; there must be an underlying arbitrable grievance." (citations omitted)). It is therefore immaterial why the defendants are protesting, so long as the protest does not arise from a grievable issue.[7]

Article XII, § 2 of the CBA defines the scope of the grievance procedure, and provides that any "question, complaint, dispute or grievance arising out of and during the term of this Agreement *involving its interpretation and application . . .* shall be considered a grievance." (*See* CBA, Docket Entry 7-2 at 36-37 (emphasis added)). Defendants' views about Moncayo do not concern the interpretation or application of any term of the CBA, and therefore this issue is not subject to the grievance procedure. Thus, because defendants' conduct does not arise from a grievance that is subject to arbitration, the narrow exception of *Boys Markets* does not apply, and the NLGA prohibits the requested injunction.

Defendants also argue that the requested injunction is barred by § 104 of the NLGA. The Court agrees. In addition to the broad anti-injunction provision of the NLGA, § 104 additionally prohibits federal courts from issuing an injunctive order that prohibits any person from "[g]iving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." 29 U.S.C. § 104(e). In this case, the inflatable rat is clearly intended to publicize the existence of defendants' dispute with plaintiff, which the parties agree is a labor dispute within the meaning of the statute. Section 4 therefore creates an

---

[7] Similarly, any claim that defendants have violated Microtech's rights under Article V of the CBA is immaterial to this analysis. (*See* CBA, Art. V, Docket Entry 7-2, at 18).

6

additional bar to this Court's ability to issue the requested injunction.

### B. Analysis Under Traditional Preliminary Injunction Standard

Although the Court lacks jurisdiction to issue the requested injunction, the Court also concludes in the alternative that, even assuming *arguendo* that the NLGA did not prohibit the injunction sought in this case, plaintiff's motion fails under the traditional standard for preliminary injunctions. In particular, with respect to plaintiff's challenge to defendants' current use of the inflatable rat, Microtech has failed to show that it is likely to be successful on the merits, or that there are sufficiently serious questions going to the merits to make them a fair ground for litigation.[8]

As a threshold matter, the Court notes that under the facts of this case, the defendants' peaceful use of a stationary, inflatable rat to publicize a labor protest is protected by the First Amendment. *See, e.g.*, *Tucker v. City of Fairfield*, 398 F.3d 457, 462 (6th Cir. 2005) ("In our view, there is no question that the use of a rat balloon to publicize a labor protest is constitutionally protected expression within the parameters of the First Amendment."); *Int'l Union of Operating Engineers, Local 150 v. Vill. of Orland Park*, 139 F. Supp. 2d 950, 958 (N.D. Ill. 2001) ("We easily conclude that a large inflatable rat is protected, symbolic speech."); *accord Betal Environmental Corp. v. Local Union 78*, 162 F. Supp. 2d 246, 256-57 (S.D.N.Y. 2001) (citing *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940)); *W2005 Wyn Hotels v. Asbestos, Lead & Hazardous Waste Laborers Local 78*, No. 11 Civ. 1249, 2012 U.S. Dist. LEXIS 39318, at *8-9 (S.D.N.Y. Mar. 8, 2012) (noting that the issue of an inflatable rat in labor disputes is sometimes, but not always, protected by the First Amendment) (citing *Sheet Metal Workers Int'l Ass'n, Local 15*, 356 N.L.R.B. no. 162, 2011 NLRB LEXIS 254 (2011); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg.*, 485 U.S. 568, 584 (1988)). Here, plaintiff argues that Local 78 bargained away, in the CBA, the union's First Amendment right to use the inflatable rat to disrupt Microtech's business in any way. *See* Pl. Reply Mem. at 13 ("<u>Defendants have not cited any case which upheld the use of a rat against an employer where a collective bargaining agreement prohibited strikes or other disruptive activity, and also provided that the employer could seek to enjoin such activity if it was undertaken by the union.</u>") (emphasis in original)). As set forth below, the Court concludes that the unambiguous language of the "no strike" provision does not prohibit the use of an inflatable rat under the circumstances of this case.

#### 1. Disruptive Activity Clause

Plaintiff argues that posting the inflatable rat is conduct prohibited by the "no-strike" provision of the CBA, which prohibits, *inter alia*, "disruptive activity." In order to address the likelihood of success on the merits for purposes of the preliminary injunction motion, the Court must, therefore, determine whether the inflatable rat constitutes "disruptive activity" within the meaning of the CBA.

The Court interprets the "disruptive activity" clause in the context of the entire no-strike provision, not only because the clause itself qualifies the term "disruptive activity" with the phrase "of a similar nature," but also because the doctrine of

---

[8] Given plaintiff's inability to satisfy the second prong of the preliminary injunction standard, the Court need not address whether plaintiff has satisfied the irreparable harm requirement.

7

*ejusdem generis* limits the construction of this general term to things of the same nature as those enumerated with them. *See Hoy v. Incorp. Vill. of Bayville*, 765 F. Supp. 2d 158, 171 (E.D.N.Y. 2011) (citation omitted). Article XI, § I of the CBA mandates that there "shall be no strikes, walkouts, picketing, work stoppages, slowdowns, boycotts or other disruptive activity of a similar nature at a job site of, or otherwise directed at any Employer during the term of this Agreement, and there shall be no lockouts by any Employer," and further provides for several exceptions not relevant to the present issue. (Docket Entry 7-2, at 34.) Because the other activities prohibited by the clause are actions that create work stoppages or slowdowns, the phrase "disruptive activity of a similar nature" clearly only applies to activities that have a similar effect upon labor. Moreover, the Article itself it entitled "Strikes and Lockouts," suggesting that these activities are the focus of the provision.

Although it appears that the inflatable rat may have an effect on Microtech's business relationships, plaintiff has not contended that the rat itself has any effect on labor that would render this conduct similar to a strike, a walkout, or a picket line. *See Betal Envtl. Corp.*, 162 F. Supp. 2d at 251 n.5 ("Inflating a rat does not involve picketing and is not intended to stop others from working."). Indeed, there is no allegation that the inflatable rat itself has any impact on Microtech's labor force, as it relates to its contract with the union, or its work at the job sites in question. Instead, plaintiff's argument for disruption is limited to generalized harm to Microtech's present and prospective business relationships. (*See* 10/10/14 Oral Arg. Tr., at 11 ([Plaintiff's Counsel]: "I want to prove that it's disruptive, that my client is being irreparably harmed. We've had a number of clients tell Microtech that they have a lot of work coming up but because of the uncertainty of the rat, they will not be offering any work to Microtech, directly relating – as a result of the conduct of Local 78.")). For this reason, the use of the inflatable rat in this particular case is not prohibited by the "disruptive activity" clause. To the extent that plaintiff argues that the use of the inflatable rat hurts its business generally (or is embarrassing to the owner of Microtech) and is therefore "disruptive" under the CBA, such indirect, generalized "disruption" is not prohibited by the "no-strike" provision. The plain language of the provision cannot be interpreted, as plaintiff suggests, to prohibit any conduct by defendants that has a negative impact or influence, either directly or indirectly, on plaintiff's business. Thus, even if Microtech could prove the type of "disruption" it alleges, it would not violate the "no strike" provision. Since there is also no basis to conclude that defendants are in breach of any other contractual provision,[9] plaintiff has not made the required showing of a substantial likelihood of success on the merits, or even sufficiently serious questions on the merits making them a fair ground for litigation, on this issue. Accordingly, even assuming *arguendo* jurisdiction to enter the

---

[9] Although plaintiff also suggests that the use of the inflatable rat breaches defendants' contractual duty of good faith and fair dealing, the Court disagrees. The good faith and fair dealing requirement cannot be used to impose additional terms on a party to the contract that are inconsistent with the plain language of the contract. *See, e.g.*, *Talansky v. Am. Jewish Historical Soc.*, 8 A.D.3d 150, 150-51 (1st Dep't 2004) ("The second cause of action, for breach of an alleged duty of good faith and fair dealing, was inconsistent with the employer's unfettered right to terminate the employment arrangement at any time."); *see also In re Musicland Holding Corp.*, 386 B.R. 428, 438-39 (S.D.N.Y. 2008) ("The duty of good faith and fair dealing is a tool of interpretation that cannot be used to rewrite a contract and impose new terms.") (citations omitted).

8

injunction exists, the Court denies the injunction on this alternative ground.

### IV. CONCLUSION

In sum, the Court lacks jurisdiction to enjoin defendants from posting an inflatable rat at plaintiff's work sites under the circumstances of this case, because the Norris-LaGuardia Act divests the Court of jurisdiction to issue injunctions in labor disputes, and expressly prohibits enjoining unions from engaging in activities that publicize a dispute with management. Moreover, even if the NLGA did not bar the issuance of the proposed injunction, the motion would fail because the use of an inflatable rat is not a breach of the plain language of the contract between the parties and, as a result, plaintiff has not shown a likely of success on the merits, or even sufficiently serious questions on the merits making them a fair ground for litigation. Accordingly, plaintiff's motion for a preliminary injunction is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  October 27, 2014
        Central Islip, NY

\* \* \*

Plaintiff is represented by Angelo Bisceglie, Jr., Bisceglie & Associates, P.C., 112 Madison Avenue, 10th Floor, New York, NY 10016. Defendants Local 78 and Edison Severino are represented by Joseph Vitale, Cohen, Weiss and Simon L.L.P., 330 West 42nd Street, New York, NY 10036. Defendant Mason Tenders District Council of Greater New York is represented by Haluk Savci, 520 8th Avenue, Suite 650, New York, NY 10018.